JOHN J. STAHL,
*Referee.*

NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ELEANOR M. LE GRANDE, BY HER NEXT FRIEND, EDNA LE GRANDE, AND EDNA LE GRANDE, INDIVIDUALLY, PETITIONERS, v. HUBBARD & LANGE, AND AMERICAN MUTUAL INSURANCE COMPANY, RESPONDENTS.

\*      \*      \*      \*      \*      \*      \*

On or before the 25th day of January, 1927, the said Horace R. Le Grande was employed by the respondents Hubbard &

Lange as a steam-fitter. On that date he was engaged in installing a steam trap in the boiler room of a private house situated in the environs of New Brunswick, New Jersey. He arrived at his place of work at the usual time that morning. According to the testimony of his fellow-workman, he appeared to be in good health when he came to work. His widow, who last saw him on the evening of January 23d, 1927, testified that he appeared to be in good health. Agnes Buschner, at whose home he stayed at New Brunswick, testified that she saw him in the evening of January 24th, 1927, and that he appeared to be a well man.

The floor of the boiler room in which decedent was working was from three to four feet below the floor of the building and was about fifteen feet in length by twelve feet in width, and twelve or fourteen feet in height. There were two boilers in the room, only one of which, however, was in operation on the morning of January 25th, 1927. There were two windows in the boiler room, both of which were closed, and one door, which was closed from time to time. To install the trap, it was necessary for Le Grande to go up on a ladder and to work near the ceiling. The steam trap was in front of the boiler, which was in operation and about five or six feet away. The door of the boiler which was in operation was opened several times to admit coal, and one witness testified it was open for fifteen minutes while Le Grande was engaged in installing the steam trap. When he had been working on the ladder for about fifteen minutes, he came down the ladder slowly and acted "dopey," as the witnesses describe it. He sat down for a few minutes and again went up the ladder. After working there for a few minutes he came down and said to his helper, Walter McManus: "You go up there, I can't stand it any longer." As he came down the ladder for the second time he still acted "dopey," and sat in the boiler room for a few minutes; all witnesses agreed that he acted dopey and that he appeared to be weak. He was then taken home by a workman who said that he was just able to walk.

On the afternoon of January 25th, 1927, Dr. Henry Haywood was called and found Le Grande in bed and suffering from a headache and soreness in the chest. He was in a state

of shock and told the doctor that he had inhaled furnace fumes which had made him sick. The doctor testified that the physical examination was absolutely negative; that there were no physical signs that anything was wrong with the man. The doctor next saw Le Grande forty-eight hours later; the man's physical condition was negative at this time, but he was still in a state of shock. On the 29th day of January, 1927, the doctor found that the man was much worse; he found rules in the chest and directed that Le Grande be taken to the hospital. Pulmonary pneumonia developed and the man rapidly grew worse and died on February 7th, 1927. In Dr. Haywood's opinion, the original cause of the pneumonia was the inhalation of the furnace fumes. The testimony established that Eleanore M. Le Grande, a daughter of Horace R. Le Grande, was fifteen years of age on November 6th, 1926, and that she and Edna Le Grande, decedent's widow, were actually members of the decedent's household at the time of his death. Decedent earned $66 per week.

## OPINION.

In considering whether Le Grande sustained an accident arising out of and in the course of his employment, not much reliance can be put upon the testimony of the witness Walter McManus, so far as relates to the presence or absence of coal gas in the boiler room on the morning of January 25th, although his testimony in this connection was somewhat self-contradictory, I am not disposed to disregard his testimony *in tolo;* it appears beyond contradiction, however, that on the morning in question the door of the boiler which was in operation was opened several times to admit coal, while Le Grande was engaged in installing the steam trap, McManus testifying the door remained open for about fifteen minutes. It is also uncontradicted that the boiler had not been completely covered with asbestos; that merely the seams of the boiler had been filled in and that a few days after Le Grande left the shop flames appeared through the seams at several points. It will be remembered that the boiler had been in operation during the preceding night. It is common knowledge that

coal furnaces throw off fumes which are lighter than air and have a tendency to rise. It is also common knowledge that coal furnaces throw off carbon monoxide which is lighter than air and which has a lethal effect through its operation upon the human system, through the lungs. Certainly some of the furnace fumes escaped through the boiler door when it was opened from time to time. It is highly probable that some gas escaped through the seams, where a few days later flames were seen. The boiler room was not a large one and had very little ventilation. The coal fumes would therefore have a tendency to collect and remain at or near the ceiling.

The testimony was convincing that Le Grande appeared to be in good health before he went up the ladder to install the steam trap. He worked on the ladder but a few minutes when he came down slowly acting weak and "dopey." After a short rest, he again went up the ladder for a period of about fifteen minutes, when he came down and said to his helper: "I can't stand it up there any longer, you go up." Thereafter, he sat in the boiler room for a few minutes, acting weak and "dopey," as the witnesses testified. On the afternoon of the same day he was so weak that Dr. Haywood was called. Le Grande told the doctor that he had inhaled furnace fumes which had made him sick. The doctor found no sign of anything wrong with the man's lungs at that time. The man had a headache and there was a soreness about the chest. Forty-eight hours later, upon examination, there was no sign of any pulmonary trouble. The doctor's testimony is clear and uncontradicted, that in his opinion the pneumonia from which Le Grande subsequently died was induced by inhalation of the furnace fumes. The preponderance of the testimony constrains me to find that Le Grande was exposed to furnace fumes which were the original cause of the pneumonia from which he later died. I do therefore find that he sustained an accident arising out of and in the course of his employment.

\*     \*     \*     \*     \*     \*     \*

W. E. STUBBS,
*Deputy Commissioner.*